FILED
CLERK

March 15, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MANUEL ALVAREZ, SR*., on behalf of himself
and others similarly situated*,

              Plaintiff,

              -against-

EXPERIAN INFORMATION SOLUTIONS, INC.,

              Defendant.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

19-CV-03343 (JS) (JMW)

**A P P E A R A N C E S :**

Daniel Zemel, Esq.
Elizabeth Easley Apostola, Esq.
**Zemel Law LLC**
660 Broadway
Paterson, NJ 07514
862-227-3106
*Attorneys for Plaintiff*

James A. Francis, Esq.
John Soumilas, Esq.
Lauren Kw Brennan, Esq.
Edward Skipton, Esq.
Jordan M. Sartell, Esq.
**Francis Mailman Soumilas P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
215-735-8600
*Attorneys for Plaintiff*

Kerianne Tobitsch, Esq.
**Jones Day**
250 Vesey Street
New York, NY 10281
212-326-8321
*Attorney for Experian*

Kerry Cordill Fowler, Esq.
**Jones Day**
555 S. Flower St., 50th Fl.
Los Angeles, CA 90071
213-489-3939
*Attorney for Experian*

**WICKS,** Magistrate Judge:

Plaintiff Manuel Alvarez commenced this consumer class action alleging that Experian

Information Solutions, Inc. ("Experian"), violated the Fair Credit Reporting Act, 15 U.S.C. §§

1681-1681x ("FCRA"), New York Fair Credit Reporting Act ("NYFCRA"), and NY Gen Bus.

Law §§ 380 *et seq*., by improperly associating customers with terrorists, narcotics traffickers,

money launderers, arms dealers, and other like-minded criminals.  Before the Court is Experian's

motion to compel arbitration (DE 72), and Plaintiff's motion to strike based upon a new

argument raised by Experian on reply (DE 81).[1]

For the reasons herein, Experian's motion to compel arbitration is granted, and Plaintiff's

motion to strike is denied.

## **BACKGROUND**

### A.  **Relevant Factual Background**

Plaintiff commenced this action alleging that Experian sold a consumer credit report to

his prospective loan lender that inaccurately identified him as a person listed on the U.S.

Treasury Department's Office of Foreign Assets Control List ("OFAC List").  (DE 1 at ¶¶ 40-

50.)  Plaintiff further alleges that this error delayed approval of his mortgage application,

resulting in out-of-pocket costs including additional rent payments, and other damages including

harm to reputation and emotional distress.  (DE 1 at ¶ 51.)

---

[1] These motions were referred to the undersigned by the Honorable Joanna Seybert for decision.  (*See* Electronic Order dated Jan. 5, 2023.)

ConsumerInfo.com, Inc. ("ECS") is a corporate affiliate of Experian, both wholly owned by Experian Holdings, Inc., and share the same parent company Experian plc.  (*See* DE 76 at ¶ 2.)  ECS offers consumers various services including "CreditWorks," which is a credit monitoring service.  On July 10, 2019, Plaintiff consented to ECS' Terms of Use ("TOU") (DE 76-3) when he signed up for CreditWorks for credit monitoring.  He then received a copy of his Experian credit report through ECS.  (DE 78 at 3-4.)  The TOU contains an arbitration provision ("Arbitration Agreement").  (DE 76-3 at 4.)  The Arbitration Agreement provides in relevant part that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites" and:

> The agreement to arbitrate includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

(DE 76-3 at 4.)  The Arbitration Agreement also states that:

> [R]eferences to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates (including, without limitation, our service provider, CSID), agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites.

(DE 76-3 at 4.)  Moreover, the Delegation Clause of the Arbitration Agreement provides:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

(DE 76-3 at 5-6.)

**B. Relevant Procedural Background**

Plaintiff filed the Complaint on June 5, 2019, and Experian filed its Answer on July 25, 2019.  (DE 1, 6.)  An initial conference was held, and a Scheduling Order (DE 15) was entered on October 8, 2019.  The parties then engaged in limited discovery related to the merits of the case and class certification.  On March 30, 2021, Plaintiff moved to compel nationwide class data from Experian.  (DE 45.)  In the parties' April 2, 2021 Joint Proposed Scheduling Order, Experian noted its intent to file a motion to compel arbitration (DE 46), which motion was made on April 4, 2021.  (DE 48-51.)  On April 5, 2021, the Court granted Plaintiff's motion to compel nationwide class data and ordered Experian to provide responsive class data information on or before April 26, 2021.  (DE 52.)  On April 20, 2021, the Court denied Experian's motion to compel arbitration without prejudice to allow for discovery related to arbitration, with a deadline to complete such discovery by June 19, 2021.  (Electronic Order dated April 20, 2021.)

On April 22, 2021, Experian moved to stay discovery which the Court granted, except as to the limited class-certification and arbitration-related discovery that the Court previously ordered to be completed.  (DE 63.)  The Court noted the stay would expire upon the Court's resolution of the motion to compel arbitration and, if the motion is denied, the Court was to schedule an immediate conference to finalize a schedule for any remaining merits and class-certification discovery.  (DE 63.)

The parties subsequently decided to pursue mediation and moved to stay all proceedings and deadlines but preserved their respective arguments regarding Experian's anticipated motion to compel arbitration.  (DE 66.)  The Court granted the stay.  (DE 67.)  Once mediation proved unsuccessful, the Court entered a briefing schedule on Experian's motion to compel arbitration. (Electronic Order dated November 12, 2021.)

On March 1, 2022, Experian then filed its motion to compel arbitration and stay proceedings (DE 72) pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 3, 4, which Plaintiff opposes (DE 78).[2]  Plaintiff subsequently filed a motion to strike (DE 81) a new argument raised by Experian on reply, which Experian opposes (DE 82).  The parties subsequently filed notices of supplemental authority in support of their respective positions which have been considered by the Court.  (DE 84-87, 88-89.)

<u>DISCUSSION</u>

## I.  Motion to Strike

"It is well-established that '[a]rguments may not be made for the first time in a reply brief.'" *Zirogiannis v. Seterus, Inc.,* 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)), *aff'd*, 707 F. App'x 724 (2d Cir. 2017).  But that rule enjoys an exception -- "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Id*. (quoting *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013)); *see also AP Links, LLC v. Russ*, No. 09-CV-5437 (JS) (AKT), 2017 WL 3394599, at *6 (E.D.N.Y. Aug. 7, 2017) ("[A]rguments raised for the first time in a reply brief should be disregarded unless the arguments respond to new material issues raised in the opposition papers." (internal quotation marks omitted)).

Plaintiff seeks to strike Experian's argument, raised by Experian for the first time in its reply in support of its motion to compel arbitration, that Experian may enforce the Arbitration Agreement under a third-party beneficiary theory.  (*See* DE 81.)  Plaintiff's opposition to the

---

[2] The Court granted Plaintiff's unopposed motion for leave to electronically file documents associated with his opposition under seal.  (*See* Electronic Order dated Dec. 5, 2022.)  Redacted versions of those documents were filed on the docket at DE 78.

motion to compel arbitration affirmatively addressed the third-party beneficiary related argument.  (*See* DE 78 at 18-19.)  Thus, Experian, in its reply, was allowed to address this newly raised argument.  (*See* DE 79 at 4.)  Plaintiff's motion to strike is therefore denied.  *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d at 299 (denying motion to strike where defendant's arguments were responsive to those raised in plaintiff's opposition).

Plaintiff also asks the Court to disregard Experian's response to Plaintiff's motion to strike as untimely filed.  (DE 83.)  The Court declines to do so here.  Plaintiff affirmatively argued in his opposition to the motion to compel arbitration what he then effectively argued in his motion to strike -- that Experian waived its right to raise the third-party beneficiary argument by failing to assert that argument in its moving papers.  (*See* DE 78 at 19.)  Experian responded to that argument in its reply in support of its motion to compel arbitration, noting amongst other things that a party may respond to a new argument raised in an opposition.  (*See* DE 79 at 4 n.6 (citing cases)).  Thus, regardless of whether the Court disregards Experian's opposition to the motion to strike as untimely, Experian had already addressed Plaintiff's contention that Experian cannot argue on reply that it was an intended third party-beneficiary.

## II. Motion to Compel Arbitration

### A. Legal Standard under the FAA

Section 4 of the FAA provides in relevant part that:

> A party aggrieved by the alleged failure … of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

It is well settled that the FAA is driven by "a liberal federal policy favoring arbitration agreements, and places arbitration agreements on the same footing as other contracts."  *Meyer v.*

6

*Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted). The Supreme Court has repeatedly described the FAA as the embodiment of a federal policy favoring arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345–46 (2011) (collecting cases). Indeed, Congress enacted the FAA to "overcome judicial resistance to arbitration" and "place[] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Parties may only be required to arbitrate if they have agreed to do so. *Meyer*, 868 F.3d at 73. First, the Court must determine whether a valid arbitration agreement exists between the parties, and that question is resolved by state contract law. *Id.* Second, if the Court finds that a valid arbitration agreement exists between the parties, then considers whether the parties' dispute is within the scope of the arbitration agreement. *Id.* at 74.

Motions to compel arbitration under Section 4 of the FAA are analyzed under a similar standard as motions for summary judgment. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003). "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

## B. Valid Arbitration Agreement

Under the Section 2 of the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. State contract law governs the inquiry into whether a valid

arbitration agreement exists.  *Meyer*, 868 F.3d at 73.[3]  As an initial matter, Plaintiff does not

appear to dispute the validity of the Arbitration Agreement between ECS and Plaintiff.  (*See* DE

78.)  Indeed, Plaintiff initially agreed to ECS' TOU when registering for CreditWorks online and

has continued to access CreditWorks throughout the duration of this lawsuit with full knowledge

of the Arbitration Agreement contained within the TOU.  The relevant, and heavily disputed,

question is whether the Arbitration Agreement extends to Experian.

The Arbitration Agreement expressly provides that "references to 'ECS,' 'you,' and 'us'

shall include our respective parent entities, subsidiaries, *affiliates* . . . ."  (DE 76-3 at 4 (emphasis

added).)  Plaintiff asserts that Experian never entered into a contract with Plaintiff and that ECS

is an "entirely separate entity."  (DE 78 at 21.)  Plaintiff further characterizes Experian as an

"unidentified and entirely distinct entity . . . ."  However, Experian and ECS are corporate

affiliates, both wholly owned by Experian Holdings, Inc., and share the same parent company

Experian plc.  (*See* DE 76 at ¶ 2.)  Plaintiff offers no evidence to the contrary.

The remaining focus of Plaintiff's argument is that the reference to "affiliates" is

insufficient for a non-signatory to an agreement, essentially a non-party, to compel arbitration.

(DE 78 at 17.)  Plaintiff primarily relies upon the District Court's decision in *Meeks v. Experian*

*Info. Sols., Inc.*, 2021 WL 3878734 (N.D. Cal. Aug. 31, 2021) ("*Meeks I*") which involved an

---

[3] The TOU does not contain a governing law provision.  (*See* DE 76-3.)  Plaintiff states that he cites
primarily to California law on contract formation since that is where Experian is headquartered.  (*See* DE
78 at 18.)  Experian states that New York law should apply as the forum state.  (DE 79 at 3 n.2.)  The
parties both cite directly, or rely on cases that cite, to New York and California law regarding contract
formation principles.  The Court does not need to conduct a choice of law analysis given that the relevant
substantive laws of New York and California are substantially similar and not in conflict. *See Bakon v.
Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *2 (E.D.N.Y. June 2, 2017) ("There
is no conflict between the relevant substantive law of New York and South Dakota, and so the Court need
not conduct a choice of law analysis." (citing *McCormick v. Citibank, NA*, No. 15-CV-46, 2016 WL
107911, at *4 (W.D.N.Y. Jan. 8, 2016) (collecting cases))); *Meyer*, 868 F.3d at 74 ("New York and
California apply 'substantially similar rules for determining whether the parties have mutually assented to
a contract term.'").

identical TOU.  (*See* DE 78 at 18 ("The decision denying Experian's motion to compel arbitration in *Meeks v. Experian* is precisely on point. Faced with a nearly-identical motion supported by the same ECS declarant and filed by the same law firm, attaching the identical terms of service presented here . . . .").)

There, as here (DE 76-3 at 2), the TOU states that "[f]or purposes of this Agreement, the terms 'we,' 'us' or 'ECS' refer to ConsumerInfo.com, Inc., . . . its predecessors in interest, successors and assigns, and any of its third party service providers."  *Id*.  The court relied on the definitional terms of the TOU rather than the Arbitration Agreement contained within and found that Experian did not fall within that definition.  *Meeks I*, 2021 WL 3878734, at *1.  Finding that Experian was not a party to the TOU, the court denied Experian's motion to compel arbitration. *Id*.

The Ninth Circuit Court of Appeals, however, recently disagreed, holding explicitly that that Experian was indeed a party to the Arbitration Agreement.  *See Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022) ("*Meeks II*").  In a summary order, the court reversed and remanded to the district court "with instructions to grant Experian's motion to compel arbitration."  *Id*.  The court stated that the definitional terms of the Arbitration Agreement were controlling.  *See Meeks II*, 2022 WL 17958634, at *1.  First, the court noted that "the Supreme Court has held that arbitration provisions are 'severable' from the larger contracts that contain them," and are separately enforceable even where the larger agreement is challenged.  *Id*. (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)).

Second, the court held that adhering to the TOU's definition of ECS over that of the Arbitration Agreement would violate a cannon of California law that contracts are to be

construed as to "give effect to every part." *Id*. at 2 (quoting  Cal. Civ. Code § 1641). *Cf. Lasalle Bank Nat. Ass'n v. Nomura Asset Cap*, 424 F.3d 195, 206 (2d Cir. 2005) (noting that under New York Law contracts "should be construed so as to give full meaning and effect to all of its provisions." (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir.2003)).  Thus, the district court should have used the definition found in the Arbitration Agreement to determine if Experian is a party to the agreement.  *See Meeks II*, 2022 WL 17958634, at *2.  And since Experian was seeking to compel as a party to directly enforce the Arbitration Agreement, the court rejected the plaintiffs' argument that simply because Experian is a non-signatory that Experian could not enforce the Arbitration Agreement.  *See id*.

Turning to the essential question of whether Experian is a party to the Arbitration Agreement, the *Meeks II* court looked to the existence of mutual assent since "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."  *Id*. (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). *Cf. Teah v. Macy's Inc.*, No. 11-CV-1356 (CBA) (MDG), 2011 WL 6838151, at *4 (E.D.N.Y. Dec. 29, 2011) ("A party's conduct indicates assent when he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." (internal quotation marks omitted)).  The court noted that the Arbitration Agreement defines ECS to include "affiliates," which Experian is and was when the plaintiffs entered into the agreement, and Experian also played a role in the TOU itself, which sufficiently evinced Experian's assent to be bound by the agreement.  *Id.* at *2.

Plaintiff, having leaned heavily on the district court's decision prior to the adverse subsequent history, highlights that *Meeks II* is an "unpublished opinion" by the Ninth Circuit and that the Court "is free [to] disregard" the reasoning of that decision because it conflicts with

Second Circuit authority regarding a third-party beneficiary's ability to enforce a contract.  (DE 89 at 1-2 (citing *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d. Cir. 2014).)  First, the court in *Meeks II* found that Experian was a party to the contract, and thus, did not address the third-party beneficiary argument.  *See Meeks II*, 2022 WL 17958634, at *1 n.1.  Second, though non-binding on this Court, the Court finds the reasoning of *Meeks II* to be persuasive and adopts that reasoning and holding here.

The Arbitration Agreement defines ECS to include "affiliates," which Experian was at the time Plaintiff entered into it and still is, and Experian is repeatedly referenced throughout the larger TOU.  (*See* DE 79 at 2-3 ("Experian is referenced by name over 30 times in the Terms of Use Agreement.").)  Experian assented to be bound by the Arbitration Agreement.  Moreover, Plaintiff has continued to utilize CreditWorks and consent to the TOU throughout the litigation with full knowledge of the Arbitration Agreement, and of the fact that Experian is an affiliate of ECS,[4] (*see* DE 79 at 1).  *Cf. Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (summary order) (finding that plaintiff assented to the arbitration agreement where plaintiff made multiple purchases through defendant's website even after defendant filed a motion raising the arbitration clause).  There is no reasonable basis to find that Plaintiff has not assented to arbitration with Experian.

Even if Experian could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, Experian may do so.  *See also Bakon v. Rushmore Serv. Ctr., LLC*, No.

---

[4] Experian also argues that the same counsel representing Plaintiff here, requested to pursue arbitration with Experian in a different case involving an identical TOU and Arbitration Agreement here, which is effectively a concession that ECS' Arbitration Agreement indeed extends to Experian.  (*See* DE 79 at 4 n.5 (citing *Christopher v. Experian*, No. 3:21-cv-01741 (S.D. Cal.).)  Though not a concession, it certainly undercuts the contention that the Arbitration Agreement does not extend to Experian. Taking a position seemingly directly contradictory in another case involving the same agreement is nothing short of legal legerdemain.

16-CV-6137 (ILG), 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (finding non-signatory affiliate identified within class of parties covered by Arbitrate Agreement can enforce it as an intended third-party beneficiary); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03-CV- 8823 (CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (finding non-signatory within the broad language of the Arbitration Agreement could enforce it as a third-party beneficiary).

*Au fond*, the Court finds that a valid arbitration agreement exists between the parties.

**C.  Scope of the Arbitration Agreement**

Simply because the Court concludes that there is a valid agreement to arbitrate between the parties does not end the inquiry.  The next question is whether the dispute is within the scope of what the parties agreed to arbitrate.  The scope of an arbitration agreement is governed by federal substantive law.  *Progressive Cas. Ins. Co. v. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993).  "[A]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983).

The scope of the arbitration agreement inquiry here concerns the question of arbitrability, *i.e.*, whether particular claims or questions fall within the ambit of the arbitration clause.  *See Republic of Ecuador v. Chevron Corp*., 638 F.3d 384, 393 (2d Cir. 2011) ("Questions of arbitrability' is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

Such questions are colloquially referred to as "gateway issues."  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).  These are presumptively for the court to decide

except where "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* ___ U.S. ___, 202 L. Ed. 2d 480, 139 S. Ct. 524, 528 (2019).

Here, the Delegation Clause provides in relevant part: "All issues are for the arbitrator to decide, including *the scope and enforceability* of this arbitration provision." (DE 76-3 at 5-6 (emphasis added).) The Delegation Clause evinces a clear and unmistakable intention to delegate the question of arbitrability to the arbitrator. Numerous courts have come to the same conclusion when dealing with identical language and have declined to reach the question of arbitrability. *See*, *e.g.*, *Meeks II*, 2022 WL 17958634, at *3; *Solis v. Experian Info. Sols., Inc.*, No. SACV 22-00102 (CJC) (KESx), 2022 WL 4376077, at *2 (C.D. Cal. Sept. 21, 2022); *Coulter v. Experian Info. Sols., Inc.*, No. CV 20-1814 (NIQ), 2021 WL 735726, at *2 (E.D. Pa. Feb. 25, 2021); *Stephens v. Experian Info. Sols., Inc.*, No.22-CV-00046 (SOM) (KJM), 2022 WL 2716177, at *6 (D. Haw. July 13, 2022).

The Court finds that the questions of arbitrability raised by the parties are properly for the arbitrator and not this Court, just as the parties agreed. Thus, notwithstanding Plaintiff's protests that his dispute is not encompassed by the Arbitration Agreement, the Court's inquiry can go no further. *See Henry Schein*, 139 S. Ct. at 539 (noting that where the question of arbitrability has been validly delegated to the arbitrator a "court possesses no power to decide the arbitrability

issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

### D. Litigation Conduct Waiver

Next, the parties sharply dispute whether through its conduct in litigation, Experian has waived its right to pursue arbitration. The parties also quarrel over whether this question is properly for the Court or for the arbitrator. "[O]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d Cir. 2017) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82–83 (2d Cir. 1998)). However, that rule is not without exception. Contrary to Experian's assertions, "[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver." *Id.* (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002)); *see also Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 613 (S.D.N.Y. 2020) ("Where the question is whether the movant has waived the right to compel arbitration by actively litigating, courts and judges have a peculiar expertise—not necessarily shared by arbitrators—in determining the answer."). The Court will address waiver here.

Federal law governs the waiver analysis. *Catlin Syndicate 2003 v. Traditional Air Conditioning, Inc.*, No. 17-CV-2406 (JFB) (AYS), 2018 WL 3040375, at *4 (E.D.N.Y. June 18, 2018). The Second Circuit has long applied a three-factor test in determining litigation conduct waiver: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). The "key to [the] waiver analysis" has always been

"prejudice." *Id.* (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)).

Recently, the Supreme Court put to rest the question of whether a showing of prejudice was necessary in the analysis. *Morgan v. Sundance*, ___ U.S. ___, 142 S. Ct. 1708, 1712 (2022). The Court acknowledged that nine circuits -- including the Second Circuit -- have improperly utilized "the strong federal policy favoring arbitration" to require a showing of prejudice as an "arbitration-specific waiver rule." *Id.* at 1712.  The Court held that the Eighth Circuit "was wrong to condition a waiver of the right to arbitrate on a showing of prejudice" because federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." *Id.* at 1712 (internal quotation marks omitted).  The Court explained the FAA policy favoring arbitration was meant to place arbitration agreements "upon the same footing as other contracts," not to authorize federal courts to create special rules favoring arbitration. *Id.* at 1713.  The Court noted that the typical federal rule for waiver does not have a prejudice component. *Id.* at 1714.  Rather, in determining waiver, "the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Id.* at 1713.

The Court reiterated that its only holding was that the Eighth Circuit may not invent new procedural rules rooted in the FAA's policy in favor of arbitration. *Id.*  The Court commented that the Eighth Circuit's test, "[s]tripped of its prejudice requirement . . . would focus on [the Experian's] conduct," and whether the Experian "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 1714.  The Court also noted that on remand the Eighth Circuit could decide that it is appropriate to instead apply a different procedural framework: for example, forfeiture. *Id.*; *see also Herrera v. Manna 2nd Ave. LLC*, No. 1:20-CV-

11026 (GHW), 2022 WL 2819072, at *7-8 (S.D.N.Y. July 18, 2022) (noting inconsistency this guidance can lead to).

Applying the Second Circuit's arbitration waiver test -- however without the prejudice element as the Supreme Court has now said not to do -- would lead the Court to consider the following: (1) how much time passed from commencement of litigation to that party's request to arbitrate? and (2) what litigation -- quality and quantity -- such as discovery and motion practice has taken place? *See La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citations omitted). As instructed by the Supreme Court, at bottom, the Court looks to the affirmative conduct of the party seeking to compel as to whether that conduct rose to the level of a known waiver. That test expressly takes into consideration the party's intent to waive.

The district courts within the Circuit that have thus far addressed waiver post-*Morgan* have taken varying approaches. *See Herrera*, 2022 WL 2819072, at *8 (court noted that general contractual waiver test "seems most consistent with *Morgan*'s reasoning" but utilized both tests); *Deng v. Frequency Elecs., Inc.*, No. 21-CV-6081 (BMC), 2022 WL 16923999, at *6 (E.D.N.Y. Nov. 14, 2022) (applied general contractual waiver test instead of the two-factor test); *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB) (TAM), 2022 WL 3097883, at *7 (E.D.N.Y. Aug. 4, 2022) (court considered "whether Experian's 'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right'" and applied the two factor test); *Flores v. Nat'l Football League*, No. 22-CV-0871 (VEC), 2023 WL 2301575, at *8 (S.D.N.Y. Mar. 1, 2023) (court applied what appears to be a mix of the two-factor test and general contractual waiver principles).

Since *Morgan*, the Second Circuit has not squarely addressed the applicable test, but has touched upon the subject providing some guidance.  In *Nicosia*, the defendant pursued arbitration 32 months after filing a motion to dismiss and there was only limited discovery mostly focused on whether plaintiff had agreed to arbitrate.  *See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 276 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).  The district court found there was no waiver, a conclusion affirmed by the Second Circuit on two bases (1) lack of prejudice, and (2) lack of substantial litigation on the merits.  *See id*; *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (summary order).

In a subsequent appeal, the Second Circuit briefly tackled the plaintiff's contention that since *Morgan* overruled the prejudice requirement the court incorrectly relied on prejudice in finding that the defendant did not waive its right to arbitration.  *See Nicosia v. Amazon.com, Inc.*, No. 21-CV-2624 (DC) (JFB) (SALM), 2023 WL 309545, at *4 n.2 (2d Cir. Jan. 19, 2023) (summary order).  The court concluded that this contention did not provide grounds for relief from judgment under Fed. R Civ. P. 60(b)(5) because the court had also based its conclusion on the fact that the defendant did not "engage in litigating any substantial merit questions" prior to pursuing arbitration.  *Id*.

Though this passing footnote discussion in *Nicosia* does not resolve the question at issue, it indicates that the Second Circuit has at least continued to rely on the first two factors of its waiver test.  Accordingly, this Court applies the two-factor test along with general contractual waiver principles in mind.  In *Morgan*, the Court stated: "Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'"  *Morgan*, 142 S. Ct. at 1713 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)); *see also PPG Indus., Inc. v. Webster Auto Parts, Inc*., 128 F.3d 103, 109 (2d Cir. 1997) (considering the evidence of intent to litigate

17

or arbitrate under the prior waiver test).  To make that assessment, the Court considers the time elapsed and the amount of substantial merits litigation.  "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case."  *Id*.  The Court is mindful that "waiver of arbitration is not to be lightly inferred," and "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration," including allegation of waiver . . . ."  *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985) (internal quotation marks omitted); *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983) (internal quotation marks omitted).

### i.  Application

Plaintiff contends that the 20 months between when Experian filed its Answer and first mentioned arbitration, and the eighteen months of discovery, favor a finding of waiver.  (DE 78 at 7.)[5]  Plaintiff notes the wide array of pre-trial discovery, some related to the merits, some related to class-certification.  (DE 78 at 15.)  Plaintiff characterizes Experian's attempt to invoke arbitration as a last-ditch effort after Experian's attempts to oppose class certification and related discovery started to falter.  (DE 78 at 1.)  In Plaintiff's view, Experian is simply opportunistic, having withheld knowledge of the arbitration provision within the TOU that Plaintiff consented to, employing that knowledge strategically to its advantage.  Plaintiff also points to a selection of other cases where Experian invoked arbitration shortly after filing of the complaint or initiation of discovery.  (DE 78 at 15.)  Experian on the other hand credits Plaintiff's son's March 24, 2021

---

[5] Plaintiff's reliance on *Coronel v. Bank of Am., N.A.*, No. 19- CV-8492 (ES) (MAH), 2022 WL 3443985, at *1 (D.N.J. Aug. 17, 2022) is unavailing since the Third Circuit's waiver analysis is different, and the case is dissimilar as there the defendant did not provide any reason for the delay and also "admitted in [the] deposition that there is no reason EIS could not have moved to compel sooner."  *Id*. at *5.

deposition testimony with the discovery of his father's CreditWorks account and the related Arbitration Agreement. (DE 76 at 5.)

The record does not support Plaintiff's thinly veiled assertions of gamesmanship. To the contrary, Experian states it reached out to ECS following Plaintiff's son's deposition and learned of the Arbitration Agreement on March 29, 2021 and then sent Plaintiff's Counsel a letter that same day noting Experian's intention to move to compel arbitration. (DE 76 at 6.) The record reflects that Experian raised its intent to move to compel arbitration on April 2, 2021, a mere four days after learning of the Arbitration Agreement and moved to compel just two days thereafter. (*See* DE 46, 48.) Experian's version of events is entirely consistent with the date of the deposition, the testimony, and Experian's actions shortly thereafter.

An Experian employee also testified that Experian became aware of the Arbitration Agreement through an investigation by counsel based on the deposition. (*See* DE 77-5 at 87.) There is no evidence indicating bad faith or that Experian had and withheld knowledge of the Arbitration Agreement, keeping it in its back pocket for when things went south. *See Brownstone Inv. Grp., LLC v. Levey*, 514 F. Supp. 2d 536, 544 (S.D.N.Y. 2007) ("[A] common thread that emerges from the cases in which waiver was found where a party who sought arbitration had previously engaged in extensive litigation is an aspect that smacks of deliberate conduct or bad faith designed to secure a substantial benefit at the expense of the other party.").

Plaintiff claims that Experian should have known about the Arbitration Agreement earlier. (DE 78 at 10.) Plaintiff mainly relies on an internal administrative report kept by Experian which is a record of entities that interacted with a particular consumer or that had some business interaction with that consumer with respect to the consumer's credit file. (DE 78 at 7.) Plaintiff's July 19, 2019 administrative report generally reflects four interactions with ECS,

albeit, with no real detail of what those interactions are about.  (DE 78 at 67.)  Plaintiff maintains that Experian, having reviewed this report, could have known about the Arbitration Agreement earlier.  Experian provides evidence that indicates otherwise.  The four ECS interactions noted on Plaintiff's July 10, 2019 administrative report are devoid of any obvious indication that Plaintiff enrolled in CreditWorks, rather the information noted is only the name of the inquiring entity, the date of that inquiry, and the inquiry purpose code.  (DE 79 at 7.)  An Experian employee provided an affidavit explaining that (1) none of the four purpose codes reflect credit monitoring services, (2) it is common to see various inquiries like this from resellers like ECS, and (3) ECS offers other products unrelated to credit monitoring.  (DE 75 at ¶¶ 13-18.)

In any event, whether Experian maybe could have discovered the Arbitration Agreement earlier by speculative steps it could have taken does not speak to anything other than ordinary negligence.  That alone is insufficient for a finding of waiver.  *See Deng v. Frequency Elecs., Inc.,* No. 21-CV-6081 (BMC), 2022 WL 16923999, at *7 (E.D.N.Y. Nov. 14, 2022) ("It therefore is possible that somewhere in FEI's files, there was a copy of the employment agreement that FEI had received from ADO that FEI should have turned over to its attorney or, if it did, that its attorney should have found and reviewed. However, that would be ordinary negligence. It does not rise to the level of a voluntary relinquishment of FEI's right to arbitrate."); *Flores v. Nat'l Football League*, No. 22-CV-0871 (VEC), 2023 WL 2301575, at *8 (S.D.N.Y. Mar. 1, 2023) ("Mere silence, oversight or thoughtlessness . . . is insufficient to support an inference of waiver." (quoting *Herrera v. Manna 2nd Ave. LLC*, No. 20-CV-11026 (GHW), 2022 WL 2819072, at *8 (S.D.N.Y. July 18, 2022)).  Plaintiff cites to *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.* to rebut this notion, but the case is inapposite because

unlike here, there the defendant had the contracts in *its* own possession.  67 F.3d 20, 26 (2d Cir. 1995).

Since the commencement of this action, the parties had only engaged in "limited discovery related to the merits of the case and class certification."  (DE 63 at 1.)  There has not been a substantial amount of merits-based litigation such as dispositive or merits-based motion practice nor was, or is, trial imminent.  *See Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (no waiver after 32-month delay because there was no substantial merits-based litigation); *Pierre v. Rochdale Vill. Inc.*, No. 18-CV-6383 (MKB) (ST), 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020) ("[N]either party has briefed the sufficiency of Plaintiff's allegations or the merits of his underlying Title VII claim or filed any other substantive motions.").  Though the amount of discovery overall weighs slightly in favor of waiver, the lack of substantive litigation weights slightly against it.

Based upon the foregoing, the Court does not find that Experian waived its right to arbitration.  Experian's affirmative conduct to date did not "knowingly relinquish the right to arbitrate by acting inconsistently with that right . . . ."  *Morgan*, 142 S. Ct. at 1712.  Experian immediately moved to enforce its right to arbitrate once it learned of the Arbitration Agreement, and there was limited pre-trial activity in that short window of time (*see* DE 44-47).  *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (analyzing the time from which defendant become aware of his right to arbitrate); *see also De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB) (TAM), 2022 WL 3097883, at *8 (E.D.N.Y. Aug. 4, 2022) ("In addition, all of the delay is attributable to defendants being unaware of the existence of the Arbitration Agreements."); *McCants v. Team Elec., Inc.,* No. 19-CV-9565 (AJN) (RWL), 2021 WL 653122, at *5 (S.D.N.Y. Feb. 19, 2021) (noting that although almost a year

21

elapsed between litigation and the assertion of the arbitration agreement, defendant only learned of the agreement through discovery and immediately raised the issue and sought to enforce it); *Vitzethum v. Dominick & Dominick Inc.*, No. 94-CV-4938 (AGS), 1996 WL 19062, at *10 (S.D.N.Y. Jan. 18, 1996) (noting that defendant only learned of the agreement through discovery, and did not have the document in its possession, and "a party cannot waive a right it does not know it has").

<u>**CONCLUSION**</u>

For the reasons stated above, Experian's motion to compel arbitration (DE 72) is **GRANTED**, and Plaintiff's motion to strike (DE 81) is **DENIED**.

As a result of granting Experian's motion to compel arbitration, the action is hereby stayed pending arbitration. *See* 9 U.S.C. § 3 (courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

Dated: Central Islip, New York
March **15**, 2023

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

22